# IN RE: ESTATE OF HAGMAN
## Case No. 83-3742 CP
Fifteenth Judicial Circuit, Palm Beach County
February 7, 1991

## APPEARANCES OF COUNSEL

**Samuel S. Smith, Esquire,** Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., for Petitioners.

**James B. Thomas, Esquire,** Thomas and Billington, P.A., for Respondents.

## OPINION OF THE COURT

VAUGHN J. RUDNICK, Circuit Judge.

*ORDER DENYING PETITIONERS' REQUEST TO EXCLUDE CERTAIN DOCUMENTARY EVIDENCE AND DIRECTING PAYMENT OF ESCHEATED FUNDS*

Maria Hagman, a/k/a Marie Hagman, died intestate on November

12, 1983, leaving no known legal heirs. Pursuant to § 732.107 Florida Statutes, the liquid assets of the estate, totaling $81,309.51, escheated to the State of Florida by Order of this Court dated March 18, 1985. Section 732.107(4) provides that:

(4) At any time within 10 years after the granting of letters, a person claiming to be entitled to the estate of the decedent may petition to reopen the administration and assert his rights to escheated property . . . *Id.*

On November 29, 1988, Erik Hagman, Birgit Arnborg, Ingegerd Hogfeldt, Lena Hellquist, Sven Bunsow, Hans Bunsow and Jan Bunsow ("PETITIONERS") filed a Petition for Payment of Escheated Funds. The PETITIONERS claim entitlement to said funds by virtue of their blood relationship to the decedent's predeceased spouse, Wictor Laurentius Hagman.

PETITIONER Erik Hagman asserts he is a brother of Wictor Laurentius Hagman. The other petitioners claim to be nieces and grandnephews of Wictor Laurentius Hagman. PETITIONERS claim entitlement to the escheated funds from the estate of the decedent under § 732.103, which provides the order of descent and distribution of an intestate estate. Subsection (5) of that section provides:

(5) If there is no kindred of either part, the whole [of] such property shall go to the kindred of the last deceased spouse of the decedent as if the deceased spouse had survived the decedent and then died intestate entitled to the estate. *Id.*

On June 1, 1990, Maria Vasilievna Miakush ("MIAKUSH") filed a Response to the Petition for Payment of the Escheated Funds and a Counter-Petition. MIAKUSH asserts she is a first cousin of the decedent and is entitled to one-third of the estate. Additionally, MIAKUSH asserts Zophia V. Krutigolovaya is a first cousin of the decedent, entitled to one-third, and two first cousins once removed, children of another first cousin who is deceased, are entitled to one-sixth each. MIAKUSH and her purported cousins therefore claim entitlement to the funds as blood heirs of the decedent.

MIAKUSH and the other claimants in the Counter-Petition are all citizens of the Soviet Union. In support of her assertion she and the other claimants under the Counter-Petition are blood heirs of the decedent, MIAKUSH has offered into evidence a series of original and reconstructed documents from the Soviet Union. These documents include birth, marriage and death certificates, which demonstrate the blood relationships of the decedent and the COUNTER-PETITIONER. They have been reconstructed because the originals were

purportedly lost or destroyed during World Wars I, II and the Russian Revolution.

PETITIONERS have objected to the entry into evidence of the reconstructed documents, contending they are inadmissible under the Florida Evidence Code. Specifically, PETITIONERS object to the introduction of the reconstructed birth certificate of Maria Kaetan-Kazimirovna Bzhozovskaya, the decedent. PETITIONERS contend the reconstructed birth certificate is inadmissible because it cannot be properly authenticated, and constitutes inadmissible hearsay without any applicable exception. RESPONDENTS take the position that the Florida Evidence Code, § 90.902, Florida Statutes, Self-Authentication, provides the exception to the general rule against the admission of hearsay.

Section 90.902 Florida Statutes, Self-Authentication, provides extrinsic evidence of authenticity as a condition precedent to admissibility is *not* required for:

(3) an official foreign document, record, or entry that is:

(a) Executed or attested to by a person in his official capacity authorized by the laws of a foreign country to make the execution or attestation; and

(b) Accompanied by a final certification, as provided herein, of the genuineness of the signature and official position of:

1. The executing person; or

2. Any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. The final certification may be made by a secretary of an embassy or legation, consul general, vice consul, or consular agent of the United States or a diplomatic or consular official of the foreign country assigned or accredited to the United States . . . *Id.*

In the case at bar, the reconstructed documents, including the birth certificate of Maria Kaetan-Kazimirovna Bzhozovskaya, are certified as genuine by one Alla Vassilievna Ushanova, Registrar at the Registry office of the Executive Committee Ternopol Regional Soviet of People's Deputies of the Ukrainian S.S.R. An official seal accompanies Ushanova's signature. The certification is dated June 22, 1988. The authenticity of Ushanova's signature and official position is in turn certified by one L.N. Pavlova, Head Notary and Registry Department Ministry of Justice of the Ukrainian S.S.R. An official seal accompanies Pavlova's

148

signature, dated July 26, 1988. The authenticity of Pavlova's signature and his official capacity are in turn certified by I. Isachenko, Section Chief Consular Department Ministry of Foreign Affairs of the U.S.S.R. A seal of the Ministry of Foreign Affairs accompanies Isachenko's signature, dated September 16, 1988. Finally, Isachenko's signature and official capacity are certified as genuine by Stephen W. Walker, Vice Consul of the United States in Moscow. This certification bears the seal of the U. S. Embassy at Moscow, and it is dated October 24, 1988.

A review of the requirements of § 90;902(3) reveals the documents in dispute are accompanied by a "chain of certificates of genuineness of signature and official position relating to the execution or attestation," as required by the statute, and the documentary evidence is admissible without extrinsic evidence of authenticity.

No Florida court has directly addressed the issue of the admissibility of reconstructed birth certificates from the Soviet Union. A very similar factual scenario was presented in *Feinberg v Makhson,* 1975 WL 7470 (Del. Ch.) In this case, the decedent died testate in 1943, but was unmarried and had no surviving issue. Years passed while efforts to establish surviving relatives continued. Thereafter, in 1962, Keila Makhson filed a Petition for Instructions, to establish her interest in the estate. Keila claimed to be a blood sister of the decedent. As proof of her relationship, Makhson submitted a series of reconstructed documents from the Soviet Union. These documents included a birth certificate, two marriage certificates and two death certificates. The genuineness of all of the documents was certified by "the Consular Certificate of . . . [the] Deputy Chief of the Consular Division of the Soviet Union at Washington, D.C." This certificate was offered pursuant to Article 7, subsections 5 and 6 of the Consular Convention Treaty made between the United States and the U.S.S.R. on June 1, 1964. As in the case at bar, affidavits as to the translation of all of the documents from Russian into English were included.

The Delaware Court of Chancery held it is [un]disputed the documents in question would be sufficient if they were authentic originals. Petitioners however, argued the critical, reconstructed records were established by a non-adversary proceeding in a foreign country on a basis that would not be acceptable in Delaware courts.

The court noted the "thawing of the 'cold war' that existed between the two powers during the 1950s." and cited the Consular Convention Treaty, which provided, in pertinent part, that documents and acts of a legal character of one country, including registrations, would thereafter have the same force and effect in the other country, as long as they

**149**

were accompanied by Consular certification that they were "drawn and executed in conformity with the laws and regulations of the country where they are designed to take effect."

In *Feinberg,* the Delaware Court of Chancery held a reconstructed birth certificate was admissible under Chancery Rule 44(a)(2), Proof of Official Record, which is almost identical to § 90.902(3) Florida Statutes. The court concluded all of the requirements of the rule had been met, therefore the proffered birth certificate was admissible, and "the real issue appears to go to the weight and sufficiency of the documentary evidence."

At the hearing before this Court, the PETITIONERS offered no evidence challenging the weight and sufficiency of the reconstructed documents, nor any evidence to establish their relationship as heirs of the predeceased spouse.

The *Feinberg* court also noted the significance of *Zschernig v Miller, Id.* at 4 *(citing Zschernig v Miller,* 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683. (1968)). In *Zschernig,* the United States Supreme Court struck down an Oregon "Iron Curtain" statute which allowed Oregon courts to decide whether or not an heir in a communist country is entitled to his distributive share of an Oregon estate. The Court found the statute was unconstitutional, holding that such matters fell within the area entrusted by the Constitution to the federal government. Thus, state court inquiries into the credibility of foreign diplomatic statements would constitute involvement in international relations and thus could not be permitted. 389 U.S. at 442, 88 S.Ct. at 671, 29 L.Ed.2d at 692.

Similarly, in *Estate of Barabash,* 334 N.Y.2d 890 (N.Y. 1972), the respondent contended the documentary evidence, a reconstructed birth certificate from the Ukrainian S.S.R., was improperly admitted. The New York Court of Appeals disagreed, holding where the state's requirements for the admission of a foreign record into evidence were met, contentions as to the reliability of those documents go to their weight and sufficiency rather than their admissibility.

In the case at bar, the reconstructed documents are executed or attested to by a person in his official capacity authorized by the laws of a foreign country to make the execution or attestation; (A. V. Ushanova, Registrar), as required by § 90.902(3)(a), and accompanied by a "chain of certificates of genuineness of signature and official position relating to the execution or attestation . . . ," (Ushanova,-Pavlova,-Isachenko) and a final certification by a Vice Consul of the United States (Stephen W. Walker), as required by § 90.902(3)(b) Florida Statutes. The reconstructed documents are in compliance with the

150

requirements of 490.902, and extrinsic evidence of authenticity is not required for their admission into evidence.

In *Zschernig v Miller, supra,* the United States Supreme Court held that for a state court to refuse to admit authenticated documents into evidence, even though they meet the state's requirements under its evidence code, would improperly impact upon the federal government's foreign relations. Thus, pursuant to the authority of the United States Supreme Court and the Consular Convention Treaty between the United States and the Soviet Union, it would be improper for a Florida court to refuse to accept documents generated by the Soviet government, when those documents are in compliance with the treaty as well as the state's evidence code.

IT IS THEREUPON ADJUDGED:

1. The PETITIONER'S Request to Exclude the reconstructed birth certificate is DENIED.

2. The reconstructed documents submitted by the blood heirs (RESPONDENTS) are ADMITTED into evidence.

3. The blood heirs of the Decedent are:

JARUSLAVA P. GLADIJ, a first cousin once removed;

PIOTR D. KULCHITSKIJ, a first cousin once removed;

MARIA VASILIEVNA MIAKUSH, a first cousin;

ZOPHIA V. KRUTIGOLOVAYA, a first cousin.

4. The escheated estate assets of $81,309.51, plus interest at the legal rate, pursuant to Florida Statute § 732.107(4), from May 15, 1985, to date of payment of said funds by the Treasurer, shall be paid to:

A. JARUSLAVA P. GLADIJ, a first cousin once removed of Maria Hagman, one-sixth of the total estate assets.

B. PIOTR D. KULCHITSKIJ, a first cousin once removed of Maria Hagman, one-sixth of the total assets.

C. MARIA VASILIEVNA MIAKUSH, a first cousin of Maria Hagman, one-third of the total estate assets.

D. ZOPHIA V. KRUTIGOLOVAYA, a first cousin of Maria Hagman, one-third of the total estate assets.

5. The Treasurer of the State of Florida shall pay the sum of $81,309.51, plus interest of twelve percent per annum from May 15, 1985, to THOMAS AND BILLINGTON, TRUST ACCOUNT, who shall distribute said funds as ordered.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 7th day of February, 1991.